Richard SINCOCK et al., Plaintiffs,

v.

Charles L. TERRY et al., Defendants.

Civ. A. No. 2470.

United States District Court
D. Delaware.

July 25, 1962.

Vincent A. Theisen, and Victor Battaglia, Wilmington, Del., for plaintiffs.

Januar D. Bove, Jr., and Frank O'Donnell, Wilmington, Del., N. Maxon Terry, and James H. Hughes, III, Dover, Del., and Robert Tunnell, Georgetown, Del., for defendants.

Before BIGGS, Circuit Judge, and WRIGHT and LAYTON, District Judges.

PER CURIAM.

In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court of the United States held that a court such as this had the jurisdiction to and must determine whether or not the apportioning of members of a state general assembly or legislature by geographical units offends the constitutional rights of the electors of the state under the equal protection clause of the Fourteenth Amendment of the Constitution of the United States because of an alleged debasement of their voting rights. This in substance constitutes the issue presented by the complaint at bar.

Section 2 of Article 2 of the Constitution of Delaware of 1897, Del.C.Ann. prescribes the Senatorial and Representative Districts of this State by geographical boundaries irrespective of the number of persons contained therein. Thus the ultimate issue before this court is whether or not Section 2 of Article 2 of the Constitution of Delaware contravenes the equal protection provision of the Fourteenth Amendment to the Constitution of the United States.

If this court should hold that the plaintiffs in the case at bar, and those similarly situated, all electors of the State of Delaware, are deprived of their rights under the Constitution of the United States by Section 2 of Article 2 of the Delaware Constitution, and entered a judgment to that effect, the present Gen-

eral Assembly and any subsequent General Assembly, the members of which were elected pursuant to Section 2 of Article 2, might be held not to be a *de jure* legislature and its legislative acts might be held invalid and unconstitutional. If such a judgment were entered by this court prior to any action taken by the present General Assembly to amend Section 2 of Article 2, there might be no *de jure* General Assembly that could effect a valid constitutional amendment, call validly for a Constitutional Convention, or even pass a valid statute. Without hearing the case at bar on the merits we cannot, of course, presently express any opinion as to the constitutional validity of Section 2 of Article 2 of the Delaware Constitution, and expressly do not do so. But the situation obviously is one clearly fraught with great danger to the people of this State.

The report of Delaware's Bipartisan Committee upon a plan for the reapportionment of its General Assembly and for the convening of a Delaware Constitutional Convention with drafts of bills was presented to the court by counsel for the moving parties and it was agreed by all counsel that the report and its accompanying bills were as presented to the Honorable Elbert N. Carvel, Governor of Delaware. It was also agreed by all counsel that the Governor has recalled the General Assembly for action in respect to matters referred to in the report on Friday, July 27, 1962. The report and exhibits represent many hours of industrious work by the Committee. But as the Committee concedes in its report the recommendations represent a compromise of divergent views.

The report recommends (A) a constitutional amendment to Article 2, Section 2 of the Delaware Constitution by act of the General Assembly passed by that body in time to comply with the publication provisions of the Constitution relative to constitutional amendments, allotting senatorial representation on a geographical basis and allotting representation in the lower house on a predetermined population basis; and, (B) immediately after the enactment of the legislation recommended in (A) the passage of an amendment to Article 16, Section 2 accelerating the date on which a constitutional convention can be held to the middle of 1963, the election of delegates thereto, however, being based upon the present geographical apportionment of representation.

We do not and cannot express any opinion whatsoever respecting the validity of the proposed legislation recommended under (A) by the Committee, but lurking in the background is the possibility that this court or the Supreme Court might be compelled in the light of Baker v. Carr, supra, to find the proposed legislation as contravening the equal protection clause of the 14th Amendment.

With respect to (B) and the Constitutional Convention to be held in conformity with the proposed amendment, the plaintiffs assert that delegates selected to participate in that convention, based upon the present geographical apportionment of representation, would also be subject to attack because of constitutional infirmity. Again, we cannot and do not express any opinion as to the merits of the plaintiffs' position. We merely allude to this to indicate the vast amount of complex and time consuming litigation which may be encountered in this or some other court before a legally unassailable Constitutional Convention could be held.

With the foregoing observations uppermost in the Court's thinking at this juncture of the proceedings and at the risk of being accused, possibly with some merit, of being presumptuous, we nevertheless think that it might be of some benefit to those we hold should initially consider the problem giving rise to this litigation to point out the possibility as a temporary haven, and not as an ultimate harbor, the embodiment of apportionment provisions by an amendment to Section 2 of Article 2 of the Delaware Constitution to prescribe that the composition or apportionment of the Senate and the House of Representatives of the General Assembly, the terms of office of its members, in the future should be

as provided by an Act of the General Assembly; i. e., provided by statute and not by constitutional provision. Such an Amendment and such an Act would not only preserve the legislative system of Delaware and the rights of its electors while a permanent effective constitutional provision relating to apportionment could be worked out, but would also afford the State through its elected representatives the opportunity to pass a new apportionment act without undue delay in the event this or another court should declare the initial legislative apportionment statute enacted under such proposal not to be in conformity with the equal protection clause of the 14th Amendment.

Whether or not such a plan as outlined above is feasible and merits either consideration or adoption is exclusively within the province of the General Assembly.

It is not necessary to state here fully the exigencies presented by the election laws of Delaware, constitutional provisions aside. The primary election this year must be held on the third Saturday in August: viz., on Saturday, August 18, 1962. It is necessary for the duly authorized officers of the political parties to notify the Department of Elections of the need for a primary election by the first Saturday in August; i. e., by Saturday, August 4, 1962. Publication of the time and places for holding primary elections must be made at least five days prior to the time the primary election is to be held: i. e., probably as a practical matter by Saturday, August 11, 1962.[1] If the Constitution is to be amended publication of the proposed amendment must be made by August 6, 1962. The sum of the foregoing is that definite and positive action should be taken by the present General Assembly prior to August 4, 1962, and must be taken by the present General Assembly no later than August 5, 1962, or nothing constructive can be

accomplished, at least through the means of the legislative branch of our State Government without months if not years of futile delay: in all probability not until after the general election of 1966.

We point out what we are sure will be obvious to the electors of this State that insofar as members of the General Assembly are concerned, if there is no valid primary election there can be no valid general election. Without a valid election law there can be no *de jure* elections either primary or general, insofar as membership in the General Assembly is concerned. Finally, and perhaps at the risk of needless repetition, we reiterate that if the apportionment provisions of Section 2 of Article 2 are held invalid, we can perceive difficulty in convening a *de jure* legislature. Without a *de jure* General Assembly it is difficult to perceive how valid legislative acts can be enacted. The unpleasant results would be far reaching.

█ In view of what we have already said, we deem it desirable and a proper exercise of our discretion to stay these proceedings in the hope and expectation that some appropriate action may be taken by the 121st General Assembly. Since, if an amendment to the Constitution is proposed by the necessary two-thirds vote of both houses of the General Assembly, under the provisions of the Delaware Constitution, the Secretary of State must publish the proposed amendment in three newspapers in each county at least three months prior to the next general election, it would serve no useful purpose to grant a stay at this time beyond August 7, 1962. This is necessarily so since the general election this year falls on November the sixth, and the last possible date for publication of the proposed amendment, assuming our calculations are correct, as provided by the Constitution, would be August 6.

1. See Sections 3102 and 3103 of Title 15, Delaware Code Annotated, as amended by Sections 1 and 7, Ch. 426, 50 Delaware Laws; Section 3108 of Title 15, Delaware Code Annotated, as amended by Section 10, Ch. 426, 50 Delaware Laws; and Section 3110 of Title 15, Delaware Code Annotated, as amended by Section 2, Ch. 107, 51 Delaware Laws.

A stay of these proceedings will therefore be granted until August 7, 1962. We shall, however, proceed with the other motions now scheduled for argument on August 2, 1962, at 2:30 P.M., D.S.T. We will enter no order on these motions until after the passage of the date and time first stated in this paragraph.