Mr. Chief Justice Warren
 

 delivered the opinion of the Court.
 

 Presented for decision in this case is the constitutional validity, under the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution, of the apportionment of seats in the Delaware General Assembly.
 

 I.
 

 Shortly after this Court’s decision in
 
 Baker
 
 v.
 
 Carr,
 
 369 U. S. 186, plaintiffs below, residents, taxpayers and qualified voters of New Castle County, Delaware, filed a complaint in the United States District Court for the District of Delaware, in their own behalf and on behalf of all persons similarly situated, challenging the apportionment of the Delaware Legislature. Defendants, sued in their representative capacities, were various officials charged with the performance of certain duties in connection with state elections. The complaint alleged deprivation of rights under the Equal Protection Clause of the Fourteenth Amendment, and asserted that the District Court had jurisdiction under the Fourteenth Amendment, 42 U. S. C. §§ 1983 and 1988, and 28 U. S. C. §§ 1343 and 2201.
 

 Plaintiffs below alleged that the apportionment of seats in the Delaware Legislature resulted in an “invidious discrimination as to the inhabitants of New Castle County and the City of Wilmington,” operated to deny them the right to cast votes for Delaware legislators “that are of equal effect with that of every other citizen of the State of Delaware,” and was arbitrary and capricious in failing to provide a reasonable classification of those voting for
 
 *830
 
 members of the Delaware General Assembly.
 
 [1]
 
 Plaintiffs also asserted that they were without any other adequate remedy since the existing legislative apportionment was frozen into the 1897 Delaware Constitution; that the present legislature was dominated by legislators representing the two less populous counties; that it was, as a practical matter, impossible to amend the State Constitution or convene a constitutional convention for the purpose of reapportioning the General Assembly; and that the Delaware Legislature had consistently failed to take,appropriate action with respect to reapportionment.
 

 Plaintiffs below sought a declaration that Art. II, § 2, of the Delaware Constitution, which established the apportionment of seats in both houses of the Delaware Legislature, is unconstitutional, and an injunction against defendants to prevent the holding of any further elections under the existing apportionment scheme. Plaintiffs also requested that the District Court either reapportion the Delaware Legislature on a population basis or, alternatively, direct that the November 1962 general election be conducted on an at-large basis. A three-judge District Court was asked for by plaintiffs, and was promptly convened.
 

 On July 25, 1962, the District Court entered an order staying the proceedings until August 7, 1962, in order to permit the Delaware Legislature to take “some appropriate action.” 207 F. Supp. 205. The court noted that, since publication of any proposed constitutional amendment at least three months prior to the next general election was required under Delaware law,
 
 [2]
 
 it would serve no useful purpose to grant a stay beyond August 7, 1962.
 

 
 *831
 
 On July 30, 1962, the General Assembly approved a proposed amendment to the legislative apportionment provisions of the Delaware Constitution,
 
 [3]
 
 based upon recommendations of a bipartisan reapportionment committee appointed by the Delaware Governor. Under Delaware law this amendment could not, however, become effective unless again approved during the next succeeding session of the General Assembly.
 
 [4]
 

 On August 7, 1962, the District Court entered an order refusing to dismiss the suit, and stated that, while it had no desire to substitute its judgment for the collective wisdom of the Delaware General Assembly in matters of legislative apportionment, it had no alternative but to proceed promptly in deciding the case. 210 F. Supp. 395. Some of the defendants applied for a further stay of proceedings so that the General Assembly coming into office in January 1963 would have an opportunity to approve the proposed constitutional amendment. On August 8, 1962, plaintiffs applied for a preliminary injunction against the conducting of the November 1962 general election under the existing apportionment provisions. Plaintiffs were thereafter permitted to amend their complaint to request that the proposed constitutional amendment also be declared unconstitutional and that the court order a provisional reapportionment of the Delaware Legislature.
 

 On October 16, 1962, the District Court denied both the applications for a preliminary injunction and for a further stay. 210 F. Supp. 396. Denial of a preliminary
 
 *832
 
 injunction effectively permitted the holding of the November 1962 general election pursuant to the legislative apportionment provisions of the 1897 Delaware Constitution. After extended pretrial proceedings, the court, on November 27, 1962, entered a pretrial order in which the parties agreed to the accuracy of a series of exhibits, statistics and various statistical computations. In early January 1963, the Delaware General Assembly, elected in November 1962, approved the proposed constitutional amendment by the requisite two-thirds vote. As a result, the amendment to the legislative apportionment provisions of Art. II, § 2, became effective on January 17, 1963, having been passed by two successive General Assemblies.
 
 [5]
 
 Trial before the District Court ensued, with the expert testimony of various political scientists being presented.
 

 On April 17, 1963, the District Court, in an opinion by Circuit Judge Biggs, held that Art. II, § 2, of the Delaware Constitution, both before and after the 1963 amendment, resulted in gross and invidious discrimination against the plaintiffs and others similarly situated, in violation of the Equal Protection Clause of the Fourteenth Amendment. 215 F. Supp. 169. Stating that “the fundamental issue presented for . . . adjudication is whether or not the apportioning of members of the General Assembly of the State of Delaware offends the electors of the State because of an alleged debasement of their voting rights,” the court indicated that it would pass upon the constitutional validity of both the provisions of the 1897 Constitution and the provisions of the 1963 constitutional amendment. After considering in detail the apportionment of legislative seats under the provisions of the 1897 Delaware Constitution, the court below concluded that “[t]he uneven growth of the different areas of the State created a condition because of which
 
 *833
 
 the numbers of inhabitants in representative and senatorial districts differed not only on an intercounty basis but also on an intracounty basis.” After discussing the effect of the 1963 reapportionment amendment, the District Court turned to a consideration of plaintiffs’ claim under the Federal Constitution. Stating that the rights asserted by plaintiffs are “personal civil rights” of great importance, the court below continued:
 

 . . Section 2 of Article II of the Constitution of Delaware as it existed prior to the 1963 Amendment and as it exists today creates such an inequality in voting power, resulting in invidious discrimination, as to bring it within the proscription of the Fourteenth Amendment of the Constitution of the United States. . . . This is true as to the apportionment of the Senate as well as to the apportionment of the House of Representatives of the General Assembly of Delaware. While mathematical exactitude in apportionment cannot be expected, and indeed is not possible in an absolute sense, disparities created by Section 2 of Article II, as it was prior to the 1963 Amendment and as it is now, are of such a startling nature as to demonstrate a debasement of franchise of individual electors of this State which the Equal Protection Clause of the Federal Constitution cannot tolerate.”
 
 [6]
 

 After holding that the apportionment of at least one house of a bicameral state legislature must be based substantially on population, the District Court rejected the relevancy of the so-called federal analogy as a justification for departures from a population-based apportionment scheme in the other house of a state legislature. Although finding no rational or reasonable basis for the Delaware apportionment, either as it previously existed
 
 *834
 
 or as amended, the court nevertheless concluded that reapportionment was basically a legislative function, and that a further opportunity should be given to the General Assembly to reapportion itself properly in accordance with the requirements of the Fourteenth Amendment. After attempting to delineate some guidelines for the Delaware Legislature to follow in reapportioning, the court below, with an eye toward the impending 1964 elections, gave the General Assembly until October 1, 1963, to adopt a constitutionally valid plan.
 
 [7]
 
 The District Court entered a decree declaring Art. II, § 2, of the Delaware Constitution to be unconstitutional, and retained jurisdiction to order injunctive or other relief if it became necessary to do so.
 

 On May 6, 1963, the Supreme Court of Delaware advised the Delaware Governor that, notwithstanding the holding of the District Court, he should proceed according to the provisions of the invalidated 1963 constitu
 
 *835
 
 tional amendment to proclaim a redistricting plan for House of Representatives seats. The Delaware Supreme Court’s opinion was predicated on the view that the District Court’s decision was not a final one, since it was appealable and since no injunctive relief had been granted. Acting on this advice, while making reference to the District Court’s decision, the Governor, on May 17, 1963, proclaimed a plan providing for the redistricting of certain House districts in accordance with the provisions of the 1963 reapportionment amendment. Under these circumstances, on May 20,1963, the District Court entered an injunction against the holding of any elections for General Assembly seats under Art. II, § 2, of the Delaware Constitution, either as it had previously existed or as amended, and again reserved jurisdiction to make such further orders as it might deem necessary. The District Court denied a motion to stay its injunction pending appeal, but, on application by defendants below, Mr. Justice Brennan, on June 27, 1963, stayed the operation of the District Court’s injunction pending final disposition of the case by this Court. Notices of appeal from the District Court’s final decree, and from its injunction and denial of the motion for a stay, were timely filed by defendants. Pursuant to this Court’s Rule 15 (3), both appeals have been treated as a single case. When appellees filed a motion to affirm, appellants countered with a motion to advance. On October 21, 1963, we noted probable jurisdiction and granted appellants’ motion to advance. 375 U. S. 877.
 

 II.
 

 Under the provisions of the 1897 Delaware Constitution relating to legislative apportionment, in force when this litigation was commenced, the State was geographically divided into 17 Senate and 35 House districts for the purpose of electing members of the Delaware Legis
 
 *836
 
 lature. Delaware senators serve four-year terms, with approximately half of the senators elected every two years, and all representatives are elected for two-year terms. Qualified voters in each Senate and House district elect one senator and one representative, under the 1897 Constitution's apportionment plan. Delaware is comprised of only three counties, and only one sizable metropolitan area — Wilmington. Under the 1897 apportionment, five senatorial districts and 10 representative districts were allocated to Kent County, to Sussex County, and to “rural” New Castle County (that part of the county outside of the City of Wilmington), and Wilmington was given two senatorial and five representative districts. The number and boundaries of both' the senatorial and representative districts were specifically fixed and described in the constitutional provisions, and no provision was made for their alteration. When the constitutional provisions were adopted, the population of the State of Delaware was approximately 180,000, with about 32,000 living in Kent County, 38,000 residing in Sussex County, and 105,000 living in New Castle County (of whom about 70,000 lived in the City.of Wilmington). By 1960, the total population of Delaware had increased to 446,292, of which 307,446 resided in New Castle County, 95,827 in Wilmington and 211,619 in “rural” New Castle County. And, under the 1960 census figures, 65,651 lived in Kent County and 73,195 resided in Sussex County.
 

 Under the 1897 apportionment scheme, as perpetuated over 65 years later, Senate districts ranged in population from 4,177 to 64,820, resulting in a maximum population-variance ratio, between the most populous and least populous Senate districts, of about 15-to-l. Senatorial districts in Kent and Sussex Counties were consistently much smaller in population than those in New Castle County, with the exception of one New Castle County district
 
 *837
 
 which, with a population of only 4,177, was the smallest senatorial district in the State.
 
 [8]
 
 Only 22% of the State’s total population resided in districts electing a majority of the members of the 17-member Senate, applying 1960 census figures to the senatorial apportionment scheme existing when this litigation was commenced.
 

 Representative districts ranged in population, as of 1960, from 1,643 to 58,228, under Art. II, § 2, of the 1897 Delaware Constitution, resulting in a maximum population-variance ratio, in the Delaware House, of about 35-to-1. Again, the average population of House districts in Kent and Sussex Counties was significantly smaller than that of those in New Castle County, although several of the “rural” New Castle County districts were among the smallest in the State. Applying 1960 census figures to the 1897 apportionment scheme, with respect to the Delaware House, the 18 most sparsely populated representative districts, containing only about 18.5% of the State’s total 1960 population, elected a majority of the members of the House of Representatives.
 
 [9]
 
 Persons living in the six most populous representative districts, 233,718, more than one-half of the total state population, had only the same voting power, under the 1897 Constitution’s scheme, as those 16,552 persons living in the six least populous districts, with respect to electing members of the Delaware House.
 
 [10]
 
 Serious disparities in the population of dis
 
 *838
 
 tricts, both House and Senate,
 
 within
 
 each county were also presented in the district population figures considered by the District Court.
 
 [11]
 

 Evidence before the District Court showed that, despite repeated attempts to reapportion the legislature or to call a constitutional convention for that purpose, the Delaware Legislature had consistently failed to take any action to change the existing apportionment of legislative seats. No initiative and referendum procedure exists in Delaware.
 
 [12]
 
 Legislative apportionment has been traditionally provided for wholly by constitutional provisions in Delaware, and a concurrence of two-thirds of both houses of two consecutive state legislatures is required in order to amend the State Constitution.
 
 [13]
 
 The Delaware General Assembly may also, by a two-thirds vote, submit to the State’s voters the question of whether to hold a constitutional convention.
 
 [14]
 

 Under the 1963 amendment to Art. II, § 2, of the Delaware Constitution, the size of the Senate is increased from 17 to 21 members, and the four added seats are
 
 *839
 
 allotted equally to Kent and Sussex Counties, giving each of the State’s three counties seven senators.
 
 [15]
 
 The added senators are to be elected at large from districts comprising about one-half of the House districts in each of the two counties. As a result of this change, each voter in Kent and Sussex Counties is entitled to vote for two senators and one representative. With respect to the House of Representatives, the amendment provides that each existing representative district with a population in excess of 15,000 persons is to be allotted an additional representative for each additional 15,000 persons or major fraction thereof. The boundaries of the original 35 representative districts are not affected, and districts receiving additional representatives are to be divided, by a redistricting commission headed by the Governor, so that each of the new districts elects one representative.
 
 [16]
 
 The net effect of the 1963 amendment, as regards immediate changes in House representation, is to allot 10 additional representatives to various districts in New Castle County, increasing the size of the House to 45 members. Representation of Kent and Sussex Counties is to be unaffected. Under the revised apportionment, the maximum population-variance ratio is reduced to about 12-to-l with respect to the House, but remains about 15-to-l in the Senate. A majority of the members of the House would be elected, under the 1963 amendment, from districts with only about 28% of the State’s total population. And, since
 
 *840
 
 the 1963 amendment added two Senate seats each for the two smaller counties, the change in senatorial apportionment would result in two-thirds of the Senate being elected from districts where only about 31% of the State’s population reside. About 21% of the State’s population would be represented by a majority of the members of the Delaware Senate, under the 1963 reapportionment.
 

 The 1963 amendment also provided that, if a constitutional convention were to be called, the number of delegates and the method of their election were not to be affected by the amended apportionment provisions, and, for the purpose of any future constitutional convention, the representative districts were to elect delegates on the basis of the apportionment provided by Art. II, § 2, as it existed prior to the amendment. Thus, the number of constitutional convention delegates would continue to be 41, one from each of the 35 representative districts provided for under the 1897 scheme, with two elected at large from each of the three counties.
 
 [17]
 

 III.
 

 In
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 533, decided also this date, we held that the Equal Protection Clause requires that seats in both houses of a bicameral state legislature-must be apportioned substantially on a population basis. Neither of the houses of the Delaware General Assembly, either before or after the 1963 constitutional amendment, was so apportioned. Thus, we hold that the District Court correctly found the Delaware legislative apportionment constitutionally invalid, and affirm the decisions below.
 

 For the reasons stated in our opinion in
 
 Reynolds
 

 [18]
 

 appellants’ reliance upon the so-called federal analogy to
 
 *841
 
 justify the deviations from a population basis in the apportionment of seats in the Delaware Legislature is misplaced.
 
 [19]
 
 And appellants’ argument that the Delaware apportionment scheme should be upheld since Congress has admitted various States into the Union although the apportionment of seats in their legislatures was based on factors other than population is also unconvincing.
 
 [20]
 
 In giving the Delaware Legislature an opportunity to adopt a constitutionally valid plan of legislative apportionment, and in deferring decision until after the November 1962 general election, because of the imminence of
 
 *842
 
 that election and the disruptive effect which its decision might have had, the District Court acted in a wise and temperate manner. And the court below did not err in granting injunctive relief after it had become apparent that, despite its decree holding that the 1963 constitutional amendment reapportioning seats in the Delaware Legislature failed to comply with federal constitutional requirements, no further reapportionment by the Delaware General Assembly was probable.
 

 Our affirmance of the decision below is not meant to indicate approval of the District Court’s attempt to state in mathematical language the constitutionally permissible bounds of discretion in deviating from apportionment according to population.
 
 [21]
 
 In our view the problem does not lend itself to any such uniform formula, and it is neither practicable nor desirable to establish rigid mathematical standards for evaluating the constitutional validity of a state legislative apportionment scheme under the Equal Protection Clause. Rather, the proper judicial approach is to ascertain whether, under the particular circumstances existing in the individual State whose legislative apportionment is at issue, there has been a faithful adherence to a plan of population-based representation, with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination.
 

 Apart from what we said in
 
 Reynolds,
 
 we express no view on questions relating to remedies at the present time.
 
 [22]
 
 Regardless of the requirements of the Delaware
 
 *843
 
 Constitution
 
 [23]
 
 and the fact that legislative apportionment has traditionally been considered a constitutional matter in Delaware, the delay inherent in following the state constitutional prescription for approval of constitutional amendments by two successive General Assemblies cannot be allowed to result in an impermissible deprivation of appellees’ right to an adequate voice in the election of legislators to represent them. Acting under general equitable principles, the court below must now determine whether it would be advisable, so as to avoid a possible disruption of state election processes and permit additional time for the Delaware Legislature to adopt a
 
 *844
 
 constitutionally valid apportionment scheme, to allow the 1964 election of Delaware legislators to be conducted pursuant to the provisions of the 1963 constitutional amendment, or whether those factors are insufficient to justify any further delay in the effectuation of appellees’ constitutional rights. We therefore affirm the decisions of the District Court here appealed from, and remand the case for further proceedings consistent with the views stated here and in our opinion in
 
 Reynolds
 
 v.
 
 Sims.
 

 It is so ordered.
 

 Mr. Justice Clark concurs in the affirmance for the reasons stated in his concurring opinion in
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 587, decided this date.
 

 [For dissenting opinion of Mr. Justice Harlan, see
 
 ante,
 
 p. 589.]
 

 Mr. Justice Stewart.
 

 In this case the appellees showed that the apportionment of seats among the districts represented in the Delaware House of Representatives and within the counties represented in the Delaware Senate, apparently reflects "no policy, but simply arbitrary and capricious action.” The appellants have failed to dispel this showing by suggesting any possible rational explanation for these aspects of Delaware’s system of legislative apportionment. Accordingly, for the reasons stated in my dissenting opinion in
 
 Lucas
 
 v.
 
 Forty-Fourth General
 
 As
 
 sembly of Colorado, post,
 
 p. 744, I would affirm the judgment of the District Court insofar as it holds that Delaware’s system of apportionment violates the Equal Protection Clause.
 

 [1]
 

 Interestingly, Art. I, § 3, of the Delaware Constitution provides : "All elections shall be free and equal.”
 

 [2]
 

 See 207 F. Supp., at 207. The decisions of the court below are reported
 
 sub nom. Sincock
 
 v.
 
 Terry
 
 and
 
 Sincock v. Duffy.
 

 [3]
 

 By the requisite two-thirds vote in both houses of the General Assembly, pursuant to Art. XVI, § 1, of the Delaware Constitution.
 

 [4]
 

 Under Art. XVI, § 1, of the Delaware Constitution, a constitutional amendment must be passed by a two-thirds vote of both houses of successive General Assemblies before becoming part of the State Constitution.
 

 [5]
 

 53 Del. Laws, c. 425 (1962); 54 Del. Laws, c. 1 (1963).
 

 [6]
 

 215 F. Supp., at 184.
 

 [7]
 

 The other two judges both wrote short opinions. Chief District Judge Wright indicated that he concurred in the view that Art. II, § 2, of the Delaware Constitution, before and after amendment, was unconstitutional, since at least one house of a state legislature must be apportioned strictly on a population basis. He indicated that he also agreed with the “precatory observation” of Judge Biggs that the other house must also be apportioned substantially on a population basis.
 

 District Judge Layton concurred in the result reached, finding that Art. II, §2, of the Delaware Constitution, prior to as well as after the 1963 amendment, was unconstitutional with respect to the House of Representatives. He stated that, since the 1963 amendment contained no severability clause, the whole amendment was unconstitutional because of the provisions relating to the House, and that therefore there was no need to consider whether the senatorial provisions were valid. He indicated, however, that he thought that it was permissible to apportion one house on a nonpopulation, area basis where the other house was apportioned strictly on population, since such a system would be patterned on the scheme of representation in the Federal Congress.
 

 [8]
 

 Included in the District Court’s opinion is a chart showing the population of the 17 senatorial districts established by Art. II, § 2, of the 1897 Delaware Constitution, and tracing the population changes in each during the period 1930-1960. 215 F. Supp., at 176.
 

 [9]
 

 A chart showing the population of the 35 representative districts established by Art. II, § 2, of the 1897 Delaware Constitution, and tracing the population changes in each during the period 1890-1960, is included in the District Court’s opinion. 215 F. Supp., at 17ár-175.
 

 [10]
 

 And, as pointed out by the court below, under the apportionment of House seats contained in Art. II, § 2, of the Delaware Constitution, “The inhabitants of the 18 least populated representative districts
 
 *838
 
 are less in number than those of the two districts having the heaviest concentration of population; nonetheless, the former elect 18 representatives in the House of Representatives, while the latter elect 2 representatives in the House of Representatives of the Delaware General Assembly.” 215 F. Supp., at 176.
 

 [11]
 

 The 35 representative districts tended to follow generally the boundaries of a “hundred,” a geographical subdivision of counties in Delaware since its founding, and the 17 senatorial districts, which were also described in a detailed fashion in Art. II, § 2, of the 1897 Delaware Constitution, were composed either of two representative districts each or two or more hundreds or portions of hundreds.
 

 [12]
 

 For a discussion of the lack of federal constitutional significance of the presence or absence of an available political remedy, see
 
 Lucas v. Forty-Fourth General Assembly of Colorado, post,
 
 pp. 736-737, decided also this date.
 

 [13]
 

 Under Art. XVI, § 1, of the Delaware Constitution.
 

 [14]
 

 Under Art. XVI, § 2, of the Delaware Constitution.
 

 [15]
 

 A chart showing the composition of the Senate and the population of each of the 21 senatorial districts under the 1963 amendment is included in the District Court’s opinion. 215 F. Supp., at 181.
 

 [16]
 

 Included in the District Court’s opinion are charts indicating the effect of the 1963 amendment on the representation of New Castle County in the House of Representatives and showing the composition of the Delaware House, as reapportioned, including the population of each of its 45 districts under 1960 census figures. 215 F. Supp., at 179-180.
 

 [17]
 

 Under Art. XVI, § 2, of the Delaware Constitution.
 

 [18]
 

 See
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 pp. 571-576.
 

 [19]
 

 That the three Delaware counties may have possessed some attributes of limited sovereignty prior to the inception of Delaware as a State provides no basis for applying the federal analogy to legislative apportionment in Delaware while holding it inapplicable in other States. Whatever the role of counties in Delaware during the colonial period, they never have had those aspects of sovereignty which the States possessed when our federal system of government was adopted. And it could hardly be contended that Delaware’s counties retained any elements of sovereign power, when the State was formed, that at all compare with those retained by the States under our Federal Constitution. See 215 F. Supp., at 186, where the District Court stated that “there never was much and there is now no sovereignty in the Counties of Delaware . . . .”
 

 Additionally, the Delaware legislative apportionment scheme here challenged, even after the 1963 constitutional amendment, fails to resemble the plan of representation in the Federal Congress in several significant respects: the Delaware House of Representatives is plainly not apportioned in accordance with population, and senators in Delaware are not chosen as representatives of counties. Although, under the 1963 amendment, each county is given an equal number of senators, the 21 senators are chosen one each from the 21 senatorial districts, seven per county, established solely for the purpose of their election. Each Delaware senator represents his district and not the county in which the district is located. Members of the Federal Senate are of course elected from a State at large, and represent the entire State.
 

 [20]
 

 See the discussion of and the reasons for rejecting this argument in
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 582.
 

 [21]
 

 The court below suggested that population-variance ratios smaller than 1%-to-l would presumably comport with minimal constitutional requisites, while ratios in excess thereof would necessarily involve deviations from population-based apportionment too extreme to be constitutionally sustainable. See 215 F. Supp., at 190.
 

 [22]
 

 See
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 585.
 

 [23]
 

 Particularly Art. XVI, § 1, which requires the approval by successive state legislatures before a proposed constitutional amendment can be adopted.
 

 In its initial opinion, incident to its order granting a limited stay, the District Court suggested that the Delaware Legislature might desire to amend the State Constitution so as to make legislative apportionment a statutory instead of a constitutional matter, in order to obviate the delay inherently involved in complying with the requirement of the Delaware Constitution that constitutional amendments must be approved by two successive General Assemblies before becoming effective. 207 F. Supp., at 206-207. In this manner, the District Court suggested, if the Delaware Legislature's attempt at reapportionment should be found deficient under the Federal Constitution, the General Assembly elected in November 1962 would be free, under state law, to proceed expeditiously with the enactment of a revised statutory reapportionment plan consonant with the requirements of the Equal Protection Clause. Unfortunately, the Delaware Legislature failed to act on the Court’s suggestion, and instead proposed the constitutional amendment hereinbefore discussed, which was .approved by two consecutive state legislatures in late 1962 and in early 1963. However, in its opinion on the merits, the District Court intimated that, with the Delaware constitutional provisions relating to legislative apportionment declared invalid, the Delaware Legislature could “then proceed to pass an apportionment statute meeting the requirements of the Fourteenth Amendment . . . .” 215 F. Supp., at 191.