Thomas E. HICKMAN, Jr., Mildred E. Banks, and V. Edward Banks, Plaintiffs,

v.

W. Howard WORKMAN, Oliver E. Hill, Charles W. Cole, Ralph E. Benson, and William D. Stevenson, constituting the Government of Sussex County, Defendants.

Supreme Court of Delaware.

Submitted: Aug. 13, 1982.

Decided: Aug. 17, 1982.

---

G. Thomas Sandbach (Argued), Wilmington, and Kenneth Millman, Georgetown, for plaintiffs.

David A. Drexler (Argued), Donald E. Reid, Wilmington, and Arthur Dean Betts, Georgetown, for defendants.

Before McNEILLY, QUILLEN and HORSEY, JJ.

PER CURIAM:

Following a ruling by the United States District Court for the District of Delaware on July 29, 1982 that the existing councilmanic districts in Sussex County are malapportioned in violation of the Equal Protection Clause of the Constitution of the United States, plaintiffs instituted this lawsuit for a declaratory judgment in the Court of Chancery. Plaintiffs, three citizens of Sussex County, contend the Government of Sussex County does not have the power to reapportion the councilmanic districts in response to the District Court's decision and resulting preliminary injunction restraining the Government of Sussex County from going forward with the impending election procedures and election of two members of the Sussex County Council.

Pursuant to Supreme Court Rule 41 plaintiffs and defendants, the five members of County Council constituting the Government of Sussex County, jointly petitioned the Court of Chancery to certify the following question of law to this Court:

"Whether the Government of Sussex County has the authority under 9 Delaware Code Chapter 70 to reapportion the Sussex County Council Districts."

On August 3, 1982 the Chancellor certified that question of law to this Court. Certification was accepted on August 6, 1982. This opinion constitutes the Court's decision answering the certified question in the affirmative.

The factual background is undisputed. On July 23, 1970 the General Assembly enacted a Home Rule Act for Sussex County. 57 *Del. Laws* c. 762, 9 *Del.C.,* c. 70.

It is provided therein in pertinent part:

"(a) GENERAL POWERS.—*The government of Sussex County, as established by this chapter, shall assume and have all powers which, under the Constitution of the State, it would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute;* including, but not limited to, any powers conferred prior to the effective date of this act by the General Assembly upon Sussex County, or upon the Levy Court of Sussex County, or upon the Levy Court Commissioners of Sussex County, or upon the officers or employees of Sussex County, or upon counties generally, or upon Levy Court Commissioners generally, or upon County Councils generally. This grant of power includes the power to fix the tax rate upon the assessed valuation of all real property in Sussex County subject to assessment by the County. This grant of power does not include the power to enact private or civil law concerning civil relationships, except as incident to the exercise of an expressly granted power, and does not include the power to define and provide for the punishment of felonies.

(b) CONSTRUCTION.—*The powers of Sussex County under this reorganization law shall be construed liberally in favor of the County,* and specific mention of particular powers in the reorganization law shall not be construed as limiting in any way the general powers stated in subsection (a) of this section." (emphasis added)

\*      \*      \*      \*      \*      \*

"(f) POWERS OF COUNTY GOVERNMENT.—All powers of the County shall be vested in the county

government, except as otherwise provided by this title or other laws of this State, and *the county government shall provide for the exercise thereof and for the performance of all duties and obligations imposed on the county by law.*" (emphasis added)

\* \* \* \* \* \*

"(v) REDISTRICTING.—In the event that by a redistricting of the senatorial or representative districts of Sussex County, the numbers of representative districts shall be reduced in number from 6 to 5, then it shall be the mandatory duty of the county government to redistrict Sussex County into 5 councilmanic districts for the election of the county government and the boundaries of each of said districts shall coincide with the boundaries of 1 of the said representative districts. To accomplish the redistricting, the county government, within 3 months after the reapportionment of the Sussex County representative districts, shall appoint 5 qualified voters of the County who shall comprise the redistricting commissioners. The commissioners shall be appointed, 1 from each of the 5 representative districts, as they would have been reapportioned, and, they shall not be employed by the County in any other capacity. No more than 3 of the members shall be affiliated with the same political party. It shall be the duty of the redistricting committee to submit to the county government a report, which shall set forth the boundaries of each councilmanic district, which shall coincide with the boundaries of a respective representative district, and shall assign to each a number from 1 to 5, and a map thereof. The report shall be in the form of a proposed ordinance. Once filed with the Clerk of the county government, the report shall be treated as an ordinance introduced by a member of the county government, to be considered by them as other proposed ordinances, provided that a map and a description of the proposed districts shall be published in addition to the other requirements of publication connected with enacting ordinances.

The county government shall adopt a redistricting ordinance at least 60 days after the report of the redistricting commission has been filed with the Clerk of the county government."

9 *Del.C.* § 7002(u) initially established boundaries for five councilmanic districts. But in spite of the initial establishment of the five districts the Levy Court Commissioners, who became County Councilmen under the Home Rule Act, enacted Ordinance Number 8 which ordained new boundaries for the five districts for the first election held under the Home Rule Act. In the years 1972, 1974, 1976, 1978, and 1980 elections were held based on the boundaries established by Ordinance Number 8. Thus, no election in fact has ever been held based upon the districts established by the Home Rule Act. Ordinance Number 8 utilized population numbers developed in the 1970 federal census. No question was raised concerning the propriety of Ordinance Number 8 until the Government of Sussex County sought an opinion of the Attorney General as to its power to reapportion the councilmanic districts following publication of the 1980 federal census. The Attorney General concluded the Government of Sussex County did not have the power to reapportion under the Home Rule Act. Counsel for the County disagreed, and the litigation previously outlined ensued.

Prior to 1970 the governing body in Sussex County was the Levy Court of Sussex County. 9 *Del.C.* 1953 § 301 *et seq.* and § 6111 *et seq.* The powers of the Levy Court at that time were limited and were interpreted strictly by the courts. See *Sincock v. Duffy,* D.Del., 215 F.Supp. 169, 183 (1963); *Roman v. Sincock,* 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); *Petition of Shell Oil Company,* Del.Super., 203 A.2d 845 (1964).

Defendants assert the limitation of powers, and the strict interpretation of those powers was changed by the Home Rule Act which granted the County Government broad powers and specifically provided for liberal construction in favor of the county in disputed matters.

The plaintiffs on the other hand rely upon the rule of statutory construction known as *expressio unius est exclusio alterius,* meaning expression of one thing is the exclusion of another. Plaintiffs argue that the General Assembly implicitly denied the Government of Sussex County the reapportionment power by expressly establishing fixed boundaries of the five councilmanic districts (9 Del.C. § 7002(u)) and by delegating only a limited power of reapportionment under section 7002(v). We reject both contentions.

It is undisputed that the General Assembly had the right to establish and reapportion councilmanic election districts in Sussex County prior to the time it passed the Home Rule Act. *See Sincock,* supra, 215 F.Supp. at 191. In fact, periodic reapportionments in response to growth and shifts in population is constitutionally required. *See, Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Roman v. Sincock,* 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); *Cohen v. Maloney,* D.Del., 410 F.Supp. 1147 (1976). It also is undisputed that the General Assembly could validly delegate its reapportionment authority to the Council, since there is nothing in the Delaware Constitution which precluded it from so doing. Further, the broad liberal construction provision of § 7001(b) of the Home Rule Act may be interpreted as in effect rebutting application of the "expressio unuis" maxim to the Act's terms.

Presumably the General Assembly was aware of its earlier grants of power to local governmental entities when it created the Sussex County Government. Its delegation of governmental powers to Sussex County Council must be examined in the light of such history. The development of the municipal government of the City of Wilmington is particularly helpful.

In 1965, the City of Wilmington enacted a "home rule" charter pursuant to 22 *Del.C.* c. 8. 22 *Del.C.* § 802, which provided that municipalities containing a population of at least 1,000 persons might amend their charters "so as to have and assume all powers which, under the Constitution of this state,

it would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute." Thus, § 802 of the municipal home rule statute parallels the language of § 7001(a) of the Sussex County Home Rule Act.

The City of Wilmington pursuant to the authority of 22 *Del.C.* § 802 revised the boundaries of the Wilmington council districts. It drew the boundaries for eight councilmanic districts and imposed a mandatory duty upon the City to revise these districts after each federal census. That this was the City's duty was recognized by the U.S. District Court in *Cohen v. Maloney,* D.Del., 410 F.Supp. 1147 (1976) in which the Court said:

"It is firmly established that State and local governments have a duty under the Equal Protection Clause to make population the prime criterion in any apportionment of the franchise. [Citations omitted]. Voting districts must be as nearly equal in population as practicable. [Citations omitted]."

As to Kent County, the General Assembly has retained complete control over the reapportionment process because it has not passed a home rule act for Kent County which delegates that power to the county. As to New Castle County plaintiffs concede that government has been delegated the power to reapportion pursuant to its Home Rule Act. The existence of that power flows from 9 *Del.C.* § 1101 which is the precise delegation of power granted to Sussex County in its Home Rule Act by § 7001(a). In New Castle County 9 *Del.C.* § 1165 calls for a mandatory redistricting after each regular federal decennial census. Plaintiffs claim this mandatory duty is a grant of power rather than a limitation on the broad powers granted by 9 *Del.C.* § 1101 which is couched in the same language as § 7001(a) of the Sussex County Home Rule Act. We are satisfied that the express mandate to reapportion in response to the federal census expressed in Section 1165 of the New Castle County Home Rule Act is a limitation of power and merely mirrors the federal constitutional require-

ments established for local governments by *Reynolds v. Sims,* 377 U.S. 695, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and its progeny. The absence of a provision similar to 9 *Del.C.* § 1165 in the Sussex County Home Rule Act then is more validly attributable to an intent to eliminate surplusage than to an unexpressed intent to withhold the power to redistrict from the general grant of power in Section 7001(a). But the legislative history of the Sussex County Home Rule Act makes our decision as to that more troublesome. The most significant argument made by the plaintiffs to counter the above conclusions is based on legislative history. It appears that the original Senate bill, Senate Bill No. 702 introduced May 19, 1970, contained as 9 *Del.C.* § 7002(v), a provision providing a "mandatory duty . . . to redistrict . . . after each regular United States decennial census." This provision was stricken by Senate Amendment No. 5 and the final and limited § 7002(v) discussed above was substituted. From this history the plaintiffs ask us to glean an intent of the General Assembly to deny general reapportionment power to the government of Sussex County.

The argument is intriguing, and indeed enterprising on the part of plaintiffs' counsel. It is difficult to pinpoint precisely the intent of the lawmakers. The discussion on the floor of the Senate, to which we have listened, discloses only an intent to do what the final version of § 7002(v) did, provide a mandatory duty on the government of Sussex County to make the five councilmanic districts directly track the districts in the State House of Representatives in the event Sussex County's representation in the latter body was reduced from six to five. There is no inkling of an intent to deny the government of Sussex County the power to reapportion itself. And we can glean no further intent than that manifested by the limited provision ultimately enacted. We view subsection (v) as nothing more than a ministerial provision of limited scope, given its conditional nature, and not related to reapportionment purposes in the broadest sense of the word.

In the first place even the provision ultimately enacted directed the government of Sussex County to do the redistricting, thus suggesting that is where the power lay. In the second place, if intent is to be attributed from the striking of the periodic mandatory redistricting provision, it is just as easy to speculate that it was considered surplusage, unwise due to the possibility of interim censuses, or undesirable in its mechanics. And thirdly, and most significantly, to draw the conclusion the plaintiffs request requires us to disregard all that we have said heretofore relating to the very concept of home rule, the express general delegation of legislative authority, the liberal construction intended with regard to the delegation, and the constitutional requirement, well established by 1970, to reapportion as a normal incident and regular duty of county government. In short, to attribute to the General Assembly the intent requested by the plaintiffs would require us to rely on a highly questionable negative inference to overcome the clear home rule direction positively enacted. This we cannot do.

We hold, therefore, that the Government of Sussex County under the General Powers granted by 9 *Del.C.* § 7001(a), the duties mandated by 9 *Del.C.* § 7002(f) and the liberal construction mandated by 9 *Del.C.* § 7001(b) has the authority under 9 *Del.C.* c. 70 to reapportion the Sussex Councilmanic Districts.