DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
No matter how liberally construed, and notwithstanding the majority’s vigorous attempts at resuscitation, the complaint in this case fails to state a claim upon which relief can be granted. The district court properly dismissed it.
I.
Plaintiffs allege that a redistricting plan, which establishes districts for a non-partisan county school board election with a maximum population deviation of under 10%, violates the Constitution. Over 30 years ago, the Supreme Court expressly held that “a maximum population deviation under 10% falls within th[e] category of minor deviations” that render a redistricting plan presumptively constitutional. Brown v. Thomson, 462 U.S. 835, 842, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983). The Court has never retreated from this presumption and the circuit courts have faithfully applied it. See, e.g., Daly v. Hunt, 93 F.3d 1212, 1219-20 (4th Cir.1996); see also League of Women Voters of Chicago v. City of Chicago, 757 F.3d 722, 725 (7th Cir.2014); Chen v. City of Houston, 206 F.3d 502, 523 n. 15 (5th Cir.2000).
To rebut the presumption, a plaintiff must “produce ... evidence to show that the apportionment process had a ‘taint of arbitrariness or discrimination.’ ” Daly, 93 F.3d at 1220 (quoting Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964)). To escape summary judgment, this standard requires that challengers offer evidence that the plan “was the product of bad faith, arbitrariness, or invidious discrimination.” Daly, 93 F.3d at 1222. To withstand a motion to dismiss, challengers need not “forecast evidence sufficient to prove the elements of [a] claim,” but their complaint must “allege sufficient facts to establish those elements.” Walters v. McMahen, 684 F.3d 435, 439 (4th Cir.2012) (internal quotation marks and citation omitted). Plaintiffs have utterly failed to do this.
The complaint does not even contain the words “bad faith,” “arbitrariness,” or “invidious discrimination,” let alone allege facts supporting such' claims. What Plaintiffs do allege is that the North Carolina legislature created a redistricting plan for the Wake County School Board designed to “disfavor incumbents who are registered Democrats and support progressive education policies,” and to instead “further Republican interests and advance conservative agenda policies.”
Plaintiffs concede, however, that Wake County’s school board elections are nonpartisan. Candidates in non-partisan elections run only under their own names, without “involving, representing, or supporting the ideas of any political party or group.” Black’s Law Dictionary (10th ed.2014) (defining “nonpartisan”). Thus, Plaintiffs’ challenge boils down to a claim that the plan governing this non-partisan election disfavors incumbents who prefer certain “education policies” and advances those who prefer different “policies.” A presumptively constitutional redistricting plan certainly cannot be found unconstitutional simply because it affords a de min-imis apportionment advantage to those who prefer certain “policies” over other “policies.”
In holding to the contrary, the majority plunges federal judges into precisely the sort of dispute that the Supreme Court has *271 told us to avoid. Because “the apportionment task” concerns “fundamental choices about the nature of representation,” that task is to be left to the states’ legislative branches absent a compelling reason to usurp it. Gaffney v. Cummings, 412 U.S. 735, 749, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973) (internal quotation marks and citation omitted). And when population deviations are less than 10%, compelling reasons are few and far between. Thus, the Supreme Court has long instructed federal courts not to wade into “the political thicket” simply to correct “minor deviations ... that no one, with confidence, can say will deprive any person of fair and effective representation.” Id. at 749-50, 93 S.Ct. 2321.
By asking us to referee a dispute as to “policy,” the complaint urges us to enter just this sort of “political thicket.” In Plaintiffs’ view (which the majority apparently shares), they can avoid dismissal of their complaint simply by alleging that the redistricting alters the political balance among those favoring different “policies.” If this were so, then this and every other redistricting challenge of this sort would recast federal judges as pollsters. It would make federal judges employ granular scrutiny of voting patterns even in nonpartisan elections to determine if those preferring certain “policies” have been disadvantaged by redistricting. And it would require federal judges to probe the state legislature’s motivation in adopting the plan. Until today, no court had suggested that a presumptively constitutional redistricting plan requires this level of supervision by a federal court.
Moreover, the fate of the school board incumbents, about whom Plaintiffs evince great concern, is irrelevant when assessing a one person, one vote claim. As the Seventh Circuit recently explained, the one person, one vote principle “protect[s] an individual’s right to vote.” League of Women Voters, 757 F.3d at 726 (emphasis in original) (internal quotation marks and citation omitted). It does not “insulate individual politicians from the threat of political reprisal once redistricting occurs.” I'd. “Simply alleging” that redistricting hands “the short end of the proverbial stick” to certain incumbents “is not enough to overcome a presumptively constitutional map.” Id.
Plaintiffs apparently prefer another redistricting plan, a plan which creates districts with less population deviation, districts that are more “compact,” less “confusing,” and split fewer “unique voting precincts.” That plan may be “more constitutionally perfect.” Daly, 93 F.3d at 1221. But “the possibility of drafting a ‘better’ plan” does not provide the basis for finding the plan created by the duly elected state legislature unconstitutional. Id.
II.
The majority attempts to rectify the complaint’s fatal shortcomings in two ways: by lowering the federal pleading standard to remove hurdles the complaint cannot clear, and by rewriting the complaint to contain facts never alleged.
A.
The majority offers a lengthy discourse on a court’s obligations when reviewing the dismissal of a complaint. But it fails to grapple with requirements the law imposes on parties seeking to state a federal claim.
Of course, a court must construe complaints liberally. But it must also ensure that, in them, plaintiffs “raise a right to relief above the speculative level.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint must permit “the reasonable in *272 ference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, to escape dismissal, a complaint must allege facts sufficient to “nudge[ ]” a plaintiffs claims “across the line from conceivable to plausible.” Twombly, 550 U.S. at 570, 127 S.Ct. 1955. “[T]ender[ing only] ‘naked assertions[s]’ devoid of ‘further factual enhancement’ ” does not suffice. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955) (second alteration added). The majority ignores these requirements. Instead, it relies on a view that a complaint need only provide “fair notice” of the claim alleged (notwithstanding the meritlessness of the claim) to escape dismissal, and may survive on even less if it espouses a’“novel legal theory.” The majority’s treatment of the pleading standard mandated by the federal rules simply does not reflect the law.
Chief among a court’s obligations during 12(b)(6) review is its mandate to dismiss any complaint that fails to meet the pleading standard articulated by the Supreme Court. Judged against this standard, the complaint here unquestionably fails. Far from permitting a “reasonable inference” of liability, it hangs its hopes on an unprecedented expansion of the one person, one vote doctrine in conflict with the Supreme Court’s teachings. The district court correctly dismissed it.
B.
Even were the pleading bar as low as the majority insists, the complaint would not clear it. In an attempt to remedy this deficiency, the majority invents allegations never pled.
First, the majority asserts that “Plaintiffs complain that the challenged districts discriminate between urban and rural voters.” But Plaintiffs do no such thing. Their sole reference to a divide between urban and rural voters comes in the complaint’s first paragraph, which characterizes the plan as creating “two ‘super-districts’ ... with an inner, urban super-district and an outer, rural super-district.” Neither the word “urban” nor the word “rural” appears again in the complaint. Nowhere do Plaintiffs allege a claim of discrimination based on geography, let alone facts sufficient to make such a claim plausible.
Next the majority insists that “Plaintiffs allege” the redistricting plan was “intended to favor incumbents of one political party over those of another.” But again, this is simply not the case.* Rather, as plaintiffs concede, the challenged redistricting plan governs a non-partisan school board election in which no candidate is affiliated with any party.
The motive for adding these two allegations to the complaint seems clear. They are critical to the majority’s attempt to align this case with Larios v. Cox, 300 F.Supp.2d 1320 (N.D.Ga.2004) (three-judge panel), summarily aff'd, 542 U.S. 947, 124 S.Ct. 2806, 159 L.Ed.2d 831 (2004), on which it so heavily relies. There, the dis *273 trict court held unconstitutional a Georgia redistricting plan because it was the product of “a deliberate and systematic policy of favoring rural and inner-city” areas over “suburban areas,” and nominees of the Democratic party over those of the Republican party. Id. at 1327, 1329. Even if Larios constituted binding precedent, which it does not, it provides no help to Plaintiffs here. For, stripped of the majority’s additions, the complaint here contains no allegations of either regional or political-party favoritism.
The majority’s response to this conclusion is telling. The majority does not, because it cannot, cite or quote any portion of the complaint' giving lie to this conclusion. Instead, the majority relies on statements about the complaint made by the district court and the Defendants. But such statements provide no substitute for allegations missing from the complaint itself. Indeed, the majority’s need to rely on outside sources in its attempt to establish the complaint’s allegations demonstrates still again how deficient the complaint is. Just as outsiders could not supply the Emperor with new clothes, they cannot supply the complaint with new allegations.
III.
In sum, the allegations in the complaint, taken in the best light for Plaintiffs, do not set forth facts that plausibly rebut the presumption of constitutionality afforded this plan. Contrary to the majority’s contention, dismissal of the complaint here is not for want of “an opportunity to develop evidence before the merits are resolved.” It is for want of allegation of facts that would permit a court to believe Plaintiffs could establish a viable claim. See Walters, 684 F.3d at 439.
The right to vote is precious. But its invocation does not empower federal courts to commandeer state legislative functions or eliminate federal pleading requirements. The Supreme Court has long held that the Constitution, while affording enormous protection to the right to vote, tolerates minor apportionment deviations. The majority today replaces this considered judgment with its own, preferring a “vast, intractable apportionment slough,” Gaffney, 412 U.S. at 750, 93 S.Ct. 2321, to the well-worn path the Supreme Court has forged and mandated we follow.
With respect, I dissent.
*274 [[Image here]]
*275 [[Image here]]
*276 [[Image here]]

 Of course if the complaint did, as the majority asserts, challenge the plan as favoring one political party over another, then the Supreme Court’s judgment in Vieth v. Jubelirer, 541 U.S. 267, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004), would, as the district court concluded, seem critical. There, a plurality of the Court agreed that political-party gerrymandering claims are nonjusticiable, id. at 281, 124 S.Ct. 1769, and'a fifth Justice agreed that such claims should not merit relief until "workable standards ... emerge” to govern them, id. at 317, 124 S.Ct. 1769 (Kennedy, J., concurring). The concerns animating a majority of the Court in Vieth are not assuaged simply by rerouting the path into the political thicket through an apportionment claim, rather than a gerrymandering claim.