**Peter B. SOBEL, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Tom ADAMS, Secretary of State of the State of Florida, Defendant.**

**Richard H. M. SWANN, Plaintiff,**

v.

**Tom ADAMS, Secretary of State of the State of Florida, et al., Defendants.**

**Civ. Nos. 182-62-M, 186-62-M.**

United States District Court
S. D. Florida,
Miami Division.

Feb. 7, 1963.

Carl A. Hiaasen, of McCune, Hiaasen, Crum & Ferris, Ft. Lauderdale, Fla., William Reece Smith, Jr., of Reaves, Carlton, Fields & Ward, Tampa, Fla., for plaintiff Swann.

Richard W. Ervin, Atty. Gen., of Florida, Tallahassee, Fla., for defendant Tom Adams.

Paul E. Sawyer, Key West, Fla., for Monroe County.

Darrey A. Davis, Miami, Fla., for Dade County.

John U. Lloyd, Ft. Lauderdale, Fla., for Broward County.

Halley B. Lewis, Arcadia, Fla., John E. Mathews, Jr. of Mathews, Osborne & Ehrlich, Jacksonville, Fla., Mallory E. Horne, Tallahassee, Fla., William G. O'Neill, Ocala, Fla., amici curiae.

Milton M. Ferrell, Miami, Fla., for amicus curiae Robert King High.

Before JONES, Circuit Judge, and McRAE and DYER, District Judges.

PER CURIAM.

This Court, when this consolidated cause was last before us, held that the then pending proposal to amend the Florida Constitution provided a rational plan of reapportionment of the Florida legislature, free from invidious discrimination. Sobel v. Adams, D.C., 208 F.Supp. 316, 324. The Constitutional amendment was rejected. The Florida Legislature was convened and reconvened in special sessions. On January 30, 1963, the Su-

preme Court of Florida, in an advisory opinion to the Governor of Florida, 150 So.2d 721 declared that the legislature might provide for reapportionment by a statutory enactment, notwithstanding the limitations of the Florida Constitution as they were prior to the decision of this Court, supra, on July 23, 1962. On February 1, 1963, the Florida Legislature passed Senate Bill 10–X (63), which provided a 43 Senator, 112 Representative legislature. The statute was approved by the Governor of Florida on February 4, 1963, and comes before us for consideration.

■ The rejected constitutional amendment would have provided for 46 senators and 135 representatives. In some respects it might have advantages over the statutory plan now before us. For example, in our former opinion we thought the suggestion to give a single county more than one senator was unwise. We still have doubts as to the desirability of doing so. The statute gives two senators to Dade County. Although we would not have directed multiple senatorial representation for any county, we certainly should not prohibit it if the state desires it. Our function begins and ends with the determination of rationality and whether there is invidious discrimination. The present plan gives some more weight to the population factor than did the rejected plan. But if it be required that both branches of the legislature, or either branch, must be apportioned on a strict population basis then, admittedly, neither the rejected amendment nor the statutory enactment would pass the test. On the other hand, if the rejected constitutional amendment set up a rational plan, free from invidious discrimination, and by our earlier opinion we have so held, it would follow that the plan now under consideration is likewise rational and free from invidious discrimination. Whatever may be said against the apportionment made by the statute, this can be said for it: it was moulded and shaped by the representatives of the people. As the princi-

ples of rationality and of invidious discrimination become better defined and more fully developed, or when further population shifts and industrial expansions take place, the Florida legislature and, if need be, the courts can again make inquiry into the problem of legislative apportionment. If additional extensions of the doctrine of population as a factor in determining representation be found necessary or desirable, it will not be a misfortune if the transition occurs in two or more stages.

■ We have examined the decisions of other courts dealing with the problem. We have studied the scholarly symposium in the November 1962 issue of the Yale Law Journal. We have had before us a report on Apportionment of State Legislatures of the Advisory Commission on Intergovernmental Relations. We have had the benefit of thorough, painstaking and exhaustive briefs of the parties to this cause and the amici curiae. By none of these are we persuaded that we should depart from the views which have been expressed in our prior opinions. The historical basis of legislative representation as it has obtained in Florida since statehood should not be completely overturned except upon a strong showing of a deprivation of equal protection of the law. We think no such showing has been made. We decide that the Florida statute, providing for apportionment, enacted by the Florida Legislature on February 1, 1963, and approved by the Governor of Florida, does not, in any respect, violate the Constitution of the United States. This being so, the cause has become moot. We judicially notice the fact that the Governor of Florida has initiated steps for the nomination and election of the additional members of the legislature provided by the statute. This eliminates the need for any coercive decree. The motion of Tom Adams, Secretary of State, seeking an order determining the validity of the recent enactments of the Florida legislature will be granted as to Senate Bill 10–X (63). The motion is denied insofar as it relates

to other legislative enactments. All other motions and petitions not heretofore disposed of will be denied. No costs will be allowed. Judgment will be entered dismissing the consolidated cause.