**Henry J. TOOMBS et al., Plaintiffs,**

v.

**Ben W. FORTSON, Jr., as Secretary of State of Georgia, et al., Defendants.**

**Civ. A. No. 7883.**

United States District Court
N. D. Georgia,
Atlanta Division.

March 25, 1966.

Francis Shackelford, Atlanta, Ga., Joseph B. Cumming, Augusta, Ga., William B. Gunter, A. R. Kenyon, Gainesville, Ga., Hamilton Lokey, Edward S. White, Israel Katz, Emmet J. Bondurant, Atlanta, Ga., J. Quentin Davidson, Columbus, Ga., Albert P. Reichert, Macon, Ga., John E. Simpson, Savannah, Ga., Raymond M. Reed, Marietta, Ga., John W. Sognier, Savannah, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., State of Georgia, Atlanta, Ga., George P. Dillard, Herbert O. Edwards and Robert E. Mozley, Decatur, Ga., Neill Leach, Scott,

Scroggins, Cash & Crim, George Finch, George D. Stewart, Atlanta, Ga., for defendants.

Before TUTTLE and BELL, Circuit Judges, and MORGAN, District Judge.

PER CURIAM:

## OPINION AND ORDER

Plaintiffs have moved for further relief in this state legislature reapportionment litigation in light of the opinion of the Supreme Court in the Florida case of Swann v. Adams, 383 U.S. 210, 86 S.Ct. 767, 15 L.Ed.2d 707, per curiam opinion dated February 25, 1966. They seek an order requiring immediate reapportionment of both houses of the General Assembly of Georgia so as to be effective for the 1966 elections.

We entered an order under date of April 1, 1965 approving as an interim plan the reapportionment of the Georgia Senate which was accomplished in 1962, and the reapportionment of the Georgia House which was accomplished in 1965. We noted that the apportionment of both the House and Senate fell somewhat short of the federal constitutional one man-one vote standard. However, it was determined that a period of trial and study of the new apportionment system was indicated so as to provide a more useful instrument of government when the General Assembly was brought within constitutional standards. We required that reapportionment be completed by May 1, 1968 so as to apply to the 1968 elections. Toombs v. Fortson, N.D.Ga., 1965, 241 F.Supp. 65. Plaintiffs did not appeal.

As a part of the interim plan as approved, the regular two year terms for 1965–66 of the House members were terminated and a special election was held for one year terms, i. e., for the year 1966. This one year term and the 1967–68 terms were a part of the respite granted, but the General Assembly, as reapportioned, was left free to complete the task during this period. The regular session of the Assembly of forty days for 1966 was completed prior to the filing of plaintiff's motion for further relief with which we are now concerned.

Thus a period of more than eleven months has elapsed since our last opinion and order without an appeal, a special election has taken place, and one regular session of the Assembly has been completed. However, this acquiescence in our previous order would be no bar to the further relief being sought if it should appear that the decision of the Supreme Court in Swann v. Adams, supra, is a binding precedent on this court, or even if it should appear to be a persuasive precedent. It is of paramount importance under our system of law that we be alert to follow Supreme Court decisions. On the other hand, our last opinion and order were entered only after full and complete hearings, and the order represented the considered judgment of the court in applying equitable principles to the question with respect to the individual federal constitutional rights involved and the legislative process of the State of Georgia.

We are not inclined to grant the further relief now being sought unless substantial similarity should appear between the facts of this case and those of Swann v. Adams as that case was presented to the Supreme Court. We do not find such similarity as the following statements of facts will demonstrate. Nevertheless, further reflection has convinced us that our previous order should be modified with respect to the time within which Georgia is required to enact a constitutional plan of apportionment into law.

## SUMMARY OF GEORGIA LITIGATION

This litigation was instituted by the plaintiffs on April 4, 1962 in the wake of Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. We promptly held a hearing and required on May 25, 1962 that either the House of Representatives or the Senate be apportioned on the basis of population. We retained jurisdiction pending action by the General Assembly to that end, and also pending decision of

the Supreme Court in cases involving the contention that both houses of a state legislature must be apportioned according to population. Toombs v. Fortson, N.D. Ga., 1962, 205 F.Supp. 248. The General Assembly of Georgia promptly met and reapportioned the Senate on the basis of population. Ga.Laws 1962, Extra Session, pp. 7, 14. Senators were elected under this plan in 1962 for the 1963–64 term and this apportionment continues to date. The theoretical minimum of population necessary to control a majority of the fifty four seats in the Senate was raised from 21.4 percent to 48.2 percent. The disparity from the standpoint of population as between districts and thus between residents of the districts was reduced from a ratio of 42.5 to 1 to a ratio of 1.81 to 1. The eight largest counties, with 41.26 percent of the state population, were allocated twenty one senators, or 40.7 percent of the total. The twenty two largest counties, with 57.11 percent of the population were allocated 29.5468 senators, or 54.72 percent. The average district should contain 73,021 people based on the 1960 population of Georgia. Four out of the fifty four districts are below this average by more than 15 percent while two exceed it by more than 15 percent. Three districts depart from the average by more than 18 percent.[1] There was no appeal from this order nor was there any objection to the new plan of Senate apportionment.

The Supreme Court rendered its decisions on June 15, 1964 in Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc. v. Lomenzo, 1964, 377 U.S. 633, 84 S.Ct. 1418, 12 L. Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 1964, 377 U.S.

656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 1964, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 1964, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed. 2d 620; and Lucas v. Colorado Forty-Fourth General Assembly, 1964, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632, extending the one man-one vote principle to state legislative representation and apportionment, and to both houses in the case of bicameral legislatures. Plaintiffs then moved for additional relief on June 17, 1964 in the form of requiring reapportionment of the Georgia House of Representatives on the basis of population.

We granted relief on June 30, 1964 by voiding the apportionment section of the Constitution, Art. III, S III, par. 1, (Code Section 2–1501), and the Georgia House apportionment statute, Code Section 47–101, as conflicting with the Fourteenth Amendment. These were declared prospectively null and void after the general election to be held in 1964. The order, as previously noted, provided that the two year terms of the members of the House of Representatives elected at that time should be limited to one year, with the further provision that plaintiffs might apply for further relief in the event the House was not reapportioned in accordance with constitutional requirements during the regular session of the General Assembly which convened in January 1965. We also directed that the General Assembly enact the necessary statutes to provide for special elections during 1965 for one year House terms for the year 1966. The General Assembly reapportioned the House at this regular session, and it was this plan of apportionment which we considered in our last opinion and order.

1. Meanwhile the Georgia County Unit System of elections for Governor and United States Senators had been voided. Sanders v. Gray, N.D.Ga., 1962, 203 F.Supp. 158, modified and affirmed, 1963, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821. The ten Georgia congressional districts were redistricted by the legislature after the decision of this court in Wesberry v. Vandiver, N.D.Ga., 1962, 206 F.Supp. 276, was reversed on appeal, sub nom. Wesberry v.

Sanders, 1964, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481. This redistricting was accomplished by the General Assembly of Georgia, Ga.Laws, 1964, p. 478, and resulted in a maximum population disparity as between the new districts ranging from 16.4 percent below the desired average to 15.5 percent above the average. See Toombs v. Fortson, N.D.Ga., 1965, 241 F. Supp. 65 for this history.

Toombs v. Fortson, supra. The special election was conducted and the members of the House are now serving the special one year terms and, as stated, the regular session of the General Assembly for 1966 has been completed. The apportionment of the House which we held to fall short of constitutional standards is depicted in the following table:

| Percentage Departure From Norm | No. of Districts | Total Population of Districts |
|---|---|---|
| 35–36.93% below | 2 | 49,914 |
| 30–35% below | 6 | 91,397 |
| 25–30% below | 11 | 193,096 |
| 20–25% below | 9 | 163,345 |
| 15–20% below | 3 | 63,641 |
| 0–15% below | 42 | 1,089,687 |
| 0–15% above | 31 | 984,069 |
| 15–20% above | 13 | 478,134 |
| 20–25% above | 24 | 830,305 |

This plan brought the House from a theoretical minimum of 22.5 percent of population having a majority of the seats to 42.341 percent. The twenty-two largest counties of Georgia's 159, having 57. 11 percent of the population, could elect 51.217 percent of the House members. The disparity between counties had been improved from a ratio of 98 to 1 under the old plan to 2.003 to 1 under the new plan. We stated that this plan still failed to meet the one man-one vote test, and pointed out that even a maximum variance of 15 percent, if in approvable form, would require a ratio not exceeding 1.353 to 1. The substantial progress made, and the need to adjust the 159 counties to the new system which required House districts wherein multiple counties were grouped in many instances, impelled us to grant the delay for a period of adjustment, trial and study.

### SUMMARY OF FLORIDA LITIGATION

The following facts are taken from the jurisdictional statement filed by the plaintiffs in the Supreme Court in Swann v. Adams, supra, and from the District Court opinions rendered in the same litigation. Sobel v. Adams, S.D.Fla., 1962, 208 F.Supp. 316; Sobel v. Adams, S.D. Fla., 1963, 214 F.Supp. 811, reversed sub nom. Swann v. Adams, 1964, 378 U.S. 553, 84 S.Ct. 1904, 12 L.Ed.2d 1033; Swann v. Adams, S.D.Fla., 1965, 258 F.Supp. 819, reversed Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501, Supreme Court opinion dated June 25, 1966.

Under the legislative apportionment existing in Florida when the decision in Baker v. Carr, supra, was rendered, 12.3 percent of the State's population could elect a majority of the Senate and 14.7 percent could elect a majority of the House. The ratio of largest to smallest House District was over 100 to 1. This apportionment was held unconstitutional on July 23, 1962. Sobel v. Adams, 208 F.Supp. 316 (D.C.Fla., 1962). The Florida Legislature then convened in special session on July 24, 1964 and adopted a proposed constitutional amendment for submission to the people in November, 1962, and enabling legislation for that amendment. This plan represented only a negligible improvement. It guaranteed each county at least one representative. The theoretical minimum for the House would have been raised only from 15 percent to 27 percent. For the Senate, the previous theoretical minimum of 12.3 percent remained between 12 and 13 percent. It was approved as constitutional by the

District Court. Sobel v. Adams, supra, 208 F.Supp. 316.

The voters rejected this proposed plan in the November, 1962 General Election, and elected senators and representatives under the old system. Thus plaintiffs had received no relief to this date as distinguished from Georgia which had already reapportioned the Senate and held a special election in late 1962 so that the senators might serve under the new plan in 1963–64.

The Florida legislature then convened in special session in November, 1962 to no avail, but at a further special session a statutory reapportionment plan was adopted in January, 1963. This plan provided for a House in which the theoretical minimum was 27.4 percent, and a Senate in which the theoretical minimum was 14 percent.

According to the Florida statutes annot., §§ 10.01 et seq., this statute increased the seats in the Senate from 38 to 43 and in the House from 95 to 112, and special elections to be held in 1963 for these extra seats provided a modicum of initial relief to plaintiffs to commence in the year 1964. On February 7, 1963, this act was upheld as a final apportionment. Sobel v. Adams, supra, 214 F. Supp. 811, and plaintiffs appealed.

On June 15, 1964, Reynolds v. Sims, and the related cases, supra, were decided by the Supreme Court. The 1963 decision in Sobel v. Adams was reversed on June 22, 1964 sub nom. Swann v. Adams and remanded "for further proceedings consistent with the views stated in Reynolds v. Sims * * *." Swann v. Adams, 1964, 378 U.S. 553, 84 S.Ct. 1904, 12 L.Ed.2d 1033. On July 20, 1964, the plaintiff moved to enjoin the placing on the November General Election ballot of a proposed constitutional amendment embodying the same 1963 legislative apportionment scheme just invalidated by the Supreme Court. The District Court declined to do so by an order dated October 21, 1964. The amendment was rejected by the Florida voters on November 3, 1964. No action was taken on plaintiff's motion to require valid reapportionment despite urgent requests on the part of plaintiffs until January 8, 1965 at which time the court entered an order deferring further action so as to give the Florida legislature an opportunity to reapportion no later than July 1, 1965. It is well to reiterate that at this time the theoretical minimum in the House was still 27.4 percent and 14 percent in the Senate.

One special reapportionment session of the Legislature adjourned without result in June, 1965. Another was convened the same month, and a reapportionment plan was enacted on June 29, 1965. Under this legislation, the ratio of House districts varied by more than 4 to 1, and Senate districts by almost 2 to 1. The House districts ranged from 58 percent below the average to 69 percent above the average and the Senate districts from 23 percent below to 19 percent above the average. The elections under this plan were to be held as a part of the regular 1966 elections.

This legislation continued senators, elected in 1964, in office until November, 1968 even where their districts had been abolished.[2] The District Court rejected this provision. Swann v. Adams, S.D. Fla.1965, 258 F.Supp. 819. The legislation also provided that senators elected in 1964 would continue in office until November 1968 even though their districts had been expanded or contracted. One senator elected by 7 percent of the population of his new district would be so continued. The court did not reject this feature of the plan. We rejected a similar proposal in Toombs v. Fortson, supra, 1965, 241 F.Supp. 65. The legislation further provided that where more than one senator was assigned to a district of two or more counties, no two senators could reside in the same county until each county in the district had a senator. This was an effort to insure that each county had a senator. The Florida court approved this feature. We

2. Florida senators are elected for four year terms while the term of Georgia senators are for two years. House members are elected for two years in both states.

held an analogous Georgia provision unconstitutional in Toombs v. Fortson, supra, 1962, 205 F.Supp. 248. As to counties having more than one senator, only Dade was sub-districted, and the sub-districting was tailored to follow the lines of two congressional districts which had been declared unconstitutionally imbalanced in previous litigation in the same court. This provision was not rejected.

The plaintiffs had attacked this act on July 6, 1965. No hearing was held until November 2, 1965. A decision was rendered on December 23, 1965 declaring the apportionment unconstitutional, but approving it as an interim measure "for a period ending sixty days after the adjournment of the 1967 regular session of the Florida Legislature." Thus the 1966 elections for 1967–68 House seats and half of the four year Senate seats (FSA 10.011), would go forward. The special features relating to the Senate received the disposition above noted. Swann v. Adams, supra, 1965. The prompt reversal by the Supreme Court followed with direction that the Florida Legislature be reapportioned on Constitutional standards in time for the 1966 elections.

The Georgia litigation is in marked contrast to the Florida litigation. The Florida Senate ratio under the 1965 plan is about the same but this came four years after the Georgia Senate reapportionment. Moreover, the "grandfather" and residence features are sharp departures from the Georgia plan, and militate against true population apportionment. The House ratio is 4 to 1 as compared to Georgia's 2 to 1. This 1965 plan represented the first substantial relief the Florida plaintiffs had been accorded and it was to become effective only after the 1966 elections for legislative terms beginning in 1967. The Georgia plaintiffs obtained almost complete relief in the Senate in 1962 effective in January, 1963. They obtained substantial relief in the House in 1965 effective in January, 1966.

In addition, it is not without significance that the Florida District Court had been under a mandate of the Supreme Court since June 22, 1964 to apply Reynolds v. Sims to the Florida legislature. The Georgia plaintiffs have never appealed from the relief accorded them, nor have they ever complained of the Senate apportionment. The court refused, *sua sponte*, to approve the Senate apportionment as not altogether within constitutional standards. No one has remotely suggested that this court has not acted with dispatch at all junctures of this litigation. The Florida plaintiffs have had the burden of delay in the court as well as in the Legislature.

This court invoked its equity power in accepting the Georgia plan to the extent deemed necessary to preserve and strengthen the legislative branch of the Georgia government with only a slight withholding of relief to plaintiffs. We deemed this discretionary measure to be a wise and proper course in the interest of plaintiffs and the state. This is still our view. We do not believe to now so hold will be an abuse of discretion in view of the difference in the facts of this litigation and the Florida apportionment litigation.

Being constrained to the view that there has been no intervening authority or fact which requires that we vacate our order of April 1, 1965 in this matter, it will stand except as modified hereinafter as to time.

Paragraph I of our Order of April 1, 1965 now provides in pertinent part:

"* * * The present apportionment of the Senate and the proposed apportionment of the House are approved as interim plans of apportionment for the period ending with the end of the regular session of the General Assembly of Georgia for 1968 or May 1, 1968, or whichever date may be earlier; * * *."

This Order is directed to affording complete relief beginning in January 1969. That date will stand but the order will be modified so as to require apportionment of the House and Senate in keeping with federal constitutional

standards not later than May 1, 1967, to be effective for the regular elections in 1968. This will provide time for this court to pass on such plan or system as may be adopted, and for any appeal from such order as may be entered. To afford complete relief in 1967 for 1968 will require another special election for one year Senate and House terms and we do not believe such a requirement to be indicated under all of the facts and circumstances.

### ORDER

The premises considered, it is decreed, ordered and adjudged as follows:

### I.

Paragraph I of the Order in this matter of April 1, 1965, 241 F.Supp. 65, 73, is deleted in its entirety and the following paragraph is substituted in lieu thereof:

"The present plan of Senate apportionment in Georgia and the proposed plan of apportionment for the House of Representatives, separately and collectively, fall short of the mandate of the equal protection clause of the Fourteenth Amendment as construed by the Supreme Court in Reynolds v. Sims and related cases, supra. The present apportionment of the Senate and the proposed apportionment of the House are approved as interim plans of apportionment for the legislative term 1967–68; without prejudice however to the right of the General Assembly of Georgia at any earlier date to alter the apportionment in either or both the Senate and House so as to more nearly comply with the subsisting constitutional requirement; and provided however that both the Senate and House must be apportioned in accordance with federal constitutional standards not later than May 1, 1967, with such apportionment to be effective for the regular 1968 elections."

### II.

In all other respects the Order is reaffirmed. The motion for further relief is denied.

It is so ordered.